# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| DOUGLAS A. RICHARDSON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Civil No. 22-03275-CV-S-MDH |
| | ) | Crim. No. 18-03094-01-CR-S-MDH |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Before the Court is Movant Douglas Richardson's ("Richardson") Motion to vacate under 28 U.S.C. § 2255 based on alleged ineffective assistance of counsel and constitutional due process violations. For reasons herein, Richardson's Motion is **DENIED**.

## BACKGROUND

On November 7, 2019, a federal jury convicted Richardson of six counts of wire fraud, in violation of 18 U.S.C. § 1343, and four counts of money laundering, in violation of 18 U.S.C. § 1957. Thereafter, this Court sentenced Richardson to concurrent sentences of 188 months on Counts 1 through 6, and concurrent sentences of 120 months on Counts 7 through 10, for a total sentence of 188 months imprisonment. This Court also ordered concurrent three-year terms of supervised release following imprisonment and restitution in the amount of $8,832,282.97 to be paid to Smart Prong Technologies ("Smart Prong") and twenty-three other victims. At trial, the Government introduced evidence from which a reasonable jury could conclude Richardson, an accountant employed part-time as chief financial officer at Smart Prong, withdrew between $4.1 million and $4.5 million from Smart Prong accounts without authorization. Evidence also showed

1

Richardson received millions of dollars from other individuals whose money, Richardson led them to believe, was being invested into various profit-earning schemes. In reality, however, evidence showed Richardson using these funds to reduce personal debts without authorization. Richardson's conviction was upheld on appeal to the Eighth Circuit. Richardson now seeks to vacate his sentences through 28 U.S.C. § 2255 based on allegations of constitutional violations and ineffective assistance.

**STANDARD**

A prisoner may move for the court to vacate, set aside, or correct the sentence imposed on the prisoner by alleging "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. A claim of ineffective assistance of counsel may be sufficient to attack a sentence under section 2255; however, the "movant faces a heavy burden." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

In such cases, the court must scrutinize the ineffective assistance of counsel claim under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* Under *Strickland*, a prevailing defendant must prove "both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988). As to the "deficiency" prong, the defendant must show that counsel "failed to exercise the customary skills and diligence that a reasonably competent attorney would [have] exhibit[ed] under similar circumstances." *Id.* (quoting *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir.)). Courts are highly deferential to the decisions of counsel and there is a "strong

2

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A reviewing court must look at the circumstances as they appeared to counsel at the time of the proceeding and should rarely second-guess an attorney's tactics or strategic decisions. *Lacher v. United States*, No. 05-3175-CV-S-RED, 2006 WL 744278 (W.D. Mo. Mar. 23, 2006). As to the "prejudice" prong, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cheek* at 1336 (quoting *Strickland* at 694).

When prosecutors fail to correct testimony they know to be false to secure a criminal conviction, a defendant's constitutional due process rights may be violated, if such false testimony reasonably impacted the jury's relevant factual determinations. *Napue v. People of State of Ill.*, 360 U.S. 264, 270-71 (1959). To succeed on such a theory, a movement must show the testimony at issue was "perjured, the government must have known it was, and there must have been a reasonable likelihood that the perjured testimony affected the jury's factual determinations." *United States v. Boone*, 437 F.3d 829, 840 (8th Cir. 2006) (citations omitted). The Eighth Circuit has also instructed that prosecutors must "apprise the court when [they] know[] that [their] witness is giving testimony that is substantially misleading." *United States v. McClintic*, 570 F.2d 685, 692 (8th Cir. 1978) (citations omitted).

**DISCUSSION**

I. **Richardson's Ineffective Assistance Claims**

a. **Conflict of Interest**

Richardson first argues that his trial counsel, Attorney John Wesley Hall (Attorney Hall), operated under a conflict of interest because he was concerned about Richardson's financial ability

3

to pay agreed-upon attorney's fees, causing Attorney Hall to put less effort into the trial. To succeed on such a claim, Richardson must show the existence of an actual conflict of interest, not merely a hypothetical or likely conflict, and that this conflict adversely impacted Richardson's defense. *Winfield v. Roper*, 460 F.3d 1026, 1039 (8th Cir. 2006) (citations omitted). This in turn requires that Richardson, "identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." *Id*. (citations omitted). Here, Richardson has failed to meet this high burden. In support of his point, Richardson attached an email from Attorney Hall to counsel for the United States, sent just prior to trial, indicating only one-fourth of the overall attorney's fee had been paid. Richardson, however, offers no evidence showing how Richardson's failure to pay, impacted Attorney Hall's work. Moreover, Richardson's briefing on the present Motion appears to advance generally the same theory of the case put forth by Attorney Hall and rejected by the jury: that Richardson was working at the direction of William Weaver, Smart Prong's co-founder, who authorized Richardson's withdrawals of Smart Prong's money. Richardson does not appear to have identified an alternative theory or tactic that reasonably could have led the jury to reach different factual conclusions. Accordingly, Richardson has failed to show the existence of an actual conflict that impacted Attorney Hall's performance at trial.

b. **Failure to Adequately Prepare for Trial**

Richardson next argues that he was subjected to ineffective assistance of counsel because Attorney Hall failed to adequately prepare for trial. Specifically, Richardson contends Attorney Hall inadequately prepared by failing to: 1) introduce certain documents into evidence; 2) review discovery with Richardson; 3) respond to certain motions from the Government; 4) move to

4

suppress evidence obtained by Christine Pezzetti, Richardson's employee; 5) call certain defense witnesses; 6) investigate and cross-examine certain Government witnesses; 7) object to Government evidence; 8) avoid opening the door to Richardson's proffer statements; and 9) represent Richardson post-trial. This Court will address each argument in turn.

### i. Introduction of Documents into Evidence

Richardson first contends that Attorney Hall failed to introduce eleven documents into evidence. These include a "forensic accountant report" and "Smart Prong shareholder's notice 9/8/2016." (Doc. 2 at 23). Richardson contends that if these eleven documents had been introduced into evidence "the results of the trial could have been different." (Doc. 2 at 24). Richardson, however, fails to connect the dots as to how the introduction of these documents could have led to a different verdict. Richardson fails to show how the introduction of these documents, assuming they could have been admitted under the rules of evidence, would have led to his acquittal on at least some of the charges in the indictment. Further, even if entering these documents into evidence "*could have*", as Richardson claims, led to different results, this is insufficient for finding ineffective assistance of counsel, which requires a *reasonable probability* that the trial verdict would have been different. *Cheek* at 1336. Richardson fails to show how Attorney Hall's decision to not introduce these documents into evidence reflects something other than a strategic decision.

### ii. Review Discovery with Richardson

Richardson next argues that the Government continued to produce discovery up to trial and that Attorney Hall failed to review this discovery with Richardson prior to trial. Richardson's claims prove conclusory, however, and fail to identify specific discovery at issue. Richardson also fails to contend how any such failure yielded a reasonable probability of a different verdict from the jury, indicating he has failed to demonstrate requisite prejudice.

5

### iii. Responding to the Government's Motions in Limine

While conceivable that a defense attorney's failure to respond, on paper or orally, to the prosecution's motions in limine, may provide a basis for an ineffective assistance claim, Richardson has again failed to identify which motions Attorney Hall failed to respond to and how, but for this failure, the jury would have likely acquitted Richardson. As it stands, Richardson's point remains limited to a conclusory claim that adequate trial preparation requires "responding to the Government's many motions." (Doc. 2 at 15). This claim proves insufficient to show requisite prejudice.

### iv. Possible Suppression Motion

Richardson argues Attorney Hall was ineffective also because he failed to move to suppress certain documents from Christine Pezzetti, who worked for Richardson at Richardson's accounting firm. Richardson contends that, on request from Postal Inspector Dennis Cunningham, Pezzetti sent an email chain to Cunningham, who in turn forwarded the chain to counsel for the United States. As Richardson sees it, Cunningham's request of Pezzetti to send the email chain makes Pezzetti a government agent and receipt of the document by Cunningham and the prosecutor unconstitutional under the Fourth Amendment's prohibition of unreasonable searches and seizures. Whether a private citizen is considered a government agent customarily focuses on three factors: "[1] whether the government had knowledge of and acquiesced in the intrusive conduct; [2] whether the citizen intended to assist law enforcement or instead acted to further his own purposes; and [3] whether the citizen acted at the government's request." *United States v. Highbull*, 894 F.3d 988, 992 (8th Cir. 2018). The Government never sought to admit the email at trial, however, and instead determined the communication contained attorney-client privilege. The

Government argues the email in question was destroyed, but Richardson contends that "they can't un-see what they've already seen." (Doc. 2 at 19).

Albeit impossible to un-ring a bell, it remains undisputed that the Government never attempted to introduce as evidence any email provided by Pezzetti. Further, Richardson has failed to identify what specific evidence, if any, the content of the emails led the Government to discover. Richardson cannot simply claim that Attorney Hall was ineffective because he failed to move to suppress, generally. A suppression motion must take aim at specific evidence.

Further, at a hearing on the present Motion, Cunningham testified that he never directed Pezzetti to search Richardson's computer system for the email that she eventually provided. (Tr. 55-57). Altogether this shows Richardson has failed to show the requisite prejudice, as it appears unlikely any suppression motion related to Pezzetti would have been successful, let alone changed the jury's verdict. For these same reasons, Richardson's argument regarding Attorney Hall's failure to cross-examine Pezzetti about her interactions with Cunningham likewise fail to demonstrate prejudice.

### v. Failure to Call Certain Defense Witnesses

Richardson next contends that Attorney Hall was ineffective because he failed to call Mark Robertson as a witness and failed to adequately investigate and cross-examine witnesses William Weaver, Stuart Sorkin, and Charlotte Rosato. As a starting point, "[t]he decision not to call a witness is a virtually unchallengeable decision of trial strategy." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) (citations omitted). "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony would have probably changed the outcome of the trial." *Hadley v. Groose*, 97

7

F.3d 1131, 1135 (8th Cir. 1996) (citations omitted). Eighth Circuit courts "generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *United States v. Villalpando*, 259 F.3d 934, 939 (8th Cir. 2001).

Richardson generally contends that, if Attorney Hall had called Robertson as a witness, Robertson would have testified that Weaver previously admitted to approving a Smart Prong loan program and authorizing certain withdrawals from Smart Prong's bank accounts as part of such program. Robertson would have cast doubt, Richardson argues, on Weaver's trail testimony, during which Weaver claimed no such loan program existed. Richardson, however, has failed to establish that such testimony would likely have led to a different verdict. First, Richardson acknowledges that other witnesses testified to having some knowledge of a Smart Prong loan program, perhaps already casting doubt on Weaver's credibility. (Doc. 31 at 6-7). It remains unclear what additional, arguably cumulative, testimony on this issue would have accomplished. Further, the Government's evidence at trial showed, rather conclusively, that Richardson used the money he withdrew from Smart Prong's bank accounts to repay personal debts. (Tr. 156-57, 171-72, 173-74, 210-11, 215, 246, 264, 398, 486, 488, 489-90). Even assuming, *arguendo*, Weaver's knowledge of a Smart Prong loan program and Weaver's authorization of some withdrawals, evidence showed that Richardson's use of those funds exceeded the scope of any such authority from Weaver. Richardson, accordingly, is unable to establish requisite prejudice related to any failure to call Robertson as a trial witness. For these same reasons, Richardson's argument as to Attorney Hall's failure to adequately cross-examine Weaver, likewise fails.

### vi. Failure to Adequately Investigate and Cross-Examine

Richardson next claims that Attorney Hall was ineffective also because he failed to adequately investigate and cross-examine Stuart Sorkin, who had written an email to Richardson

8

that "would have shown that Weaver's attorney was editing a letter of admission that vindicated Weaver and implicated the Petitioner in a scheme." (Doc. 2 at 22). Again, however, Richardson fails to explain how additional investigation and cross-examination about this email from Sorkin to Richardson would have likely yielded a different trial outcome, when significant evidence showed that Richardson used Smart Prong's money to pay personal debts, outside the scope of any authorization Weaver would have reasonably provided. (Tr. 156-57, 171-72, 173-74, 210-11, 215, 246, 264, 398, 486, 488, 489-90). Richardson has, therefore, failed to show requisite prejudice.

Richardson's final argument as to inadequate investigation and cross-examination concerns Charlotte Rosato, a personal contact of Richardson who loaned him money with the specific purpose of investing. Richardson does not contest that, though he told Rosato her money would be used for investments, he used her money to pay his personal debts. Richardson contends that Rosato testified to an inflated amount of money lost to Richardson. Even assuming, however, Attorney Hall were to have more fully investigated and cross-examined Rosato on the purported amount of loss, this bears in no way on the underlying issue of whether Richardson used Rosato's money for purposes other than investments he initially described to Rosato. As the Government points out, amount of loss is not an element of the wire fraud charge involving funds transferred from Rosato. Moreover, the record reflects, apart from Rosato's testimony, doubt existed as to the final amount of money Richardson owed Rosato. Postal Inspector Cunningham, for example, testified that the final amount owed to Rosato remained incalculable. (Tr. 534). For these reasons, Richardson cannot establish requisite prejudice. Richardson's argument about Rosato is perhaps best thought of as a challenge to the amount of restitution, which, by law, Richardson cannot challenge through § 2255. *Shephard v. United States*, 735 F.3d 797, 798 (8th Cir. 2013).

9

### vii. Stipulations to Admissibility

Though difficult to fully understand, Richardson seems to take issue with Attorney Hall's stipulation to the admissibility of certain evidence. Altogether, it appears that Richardson and Attorney Hall stipulated to 120 pieces of evidence, most of which appear to be bank records, business records affidavits, public record certificates, and promissory notes. (Crim. Doc. 55). Notably, Richardson, in addition to Attorney Hall, signed the list of stipulations prior to trial. (Crim. Doc. 55). Richardson does not demonstrate how objection to admissibility of any of the stipulated evidence would have been proper, let alone likely sustained. Nor does Richardson contend that, if sustained, objection would have led to a different verdict from the jury, indicating Richardson has failed to show requisite prejudice. Richardson included as an exhibit, an email from Attorney Hall to counsel for the United States, in which Attorney Hall explicitly identifies his rationale for the stipulations, indicating the decision to stipulate reflects a tactical strategy on the part of Attorney Hall, not subject to an ineffective assistance claim. *Edgemon v. Lockhart*, 768 F.2d 252, 255 (8th Cir. 1985); *Williams-Bey v. Trickey*, 894 F.2d 314, 316 (8th Cir. 1990).

### viii. Failure to Object

Relatedly, Richardson also takes issue with Attorney Hall's failure to object to certain lay witness testimony. Specifically, Richardson contends, "there were no objections lodged against unqualified lay witnesses who were Government's witnesses and were called on to examine the Petitioner's bank records, and what was contained therein." (Doc. 2 at 26). Richardson fails to explicitly identify what lay witness testimony he believed to be objectionable. Richardson does, however, point to a sidebar exchange he claims exemplifies the objectionable testimony.[1] This

---

[1] The sidebar conversation occurred following the Government's successful improper foundation objection to Attorney Hall's attempt to admit into evidence financial documents, including a cashier's check, during Attorney Hall's direct examination of Postal Inspector Cunningham. (Tr. 517-518).

10

exchange, however, seems to support the Government's position that, to the extent Richardson takes issue with testimony from witnesses that referenced Richardson's bank accounts, such exhibits were already admitted into evidence by stipulation prior to witness testimony. Richardson has not cited specific examples of objectionable, documentary evidence actually admitted through a lay witness. To the extent Richardson takes issue with a lay witness' testimonial examination of a bank statement previously admitted via stipulation, such an examination reflects merely the Government's chosen method of publication. While a defense attorney's failure to object to a publication method may conceivably support an ineffective assistance claim, Richardson has failed to demonstrate how such a failure was unreasonable and yielded requisite prejudice. Alternatively, to the extent Richardson's argument about lay witness testimony is simply a reiteration of his argument about Attorney Hall's stipulation of admissibility as to certain evidence, this argument fails for the same reasons discussed previously.

### ix. Opening Door to *Kastigar* Agreement

During direct examination, Attorney Hall asked Postal Inspector Cunningham about the amount of loss Rosato sustained as a result of Richardson's fraud. Cunningham provided various answers to Attorney Hall's questions, some of which appeared to prove inconsistent with one another. In the Government's estimation, at least some of Cunningham's answers opened the door to a proffer, in which Richardson admitted to committing the crimes charged. As a result, on cross examination, the Government asked Cunningham about whether, after Richardson made some repayments to Rosato, Richardson still owed Rosato money, to which Cunningham responded affirmatively. Richardson contends that Attorney Hall's direct examination of Cunningham supports his claim of ineffective assistance, as it opened the door to the *Kastigar* agreement.

11

This Court disagrees. First, though the Government claimed the door had been opened, the prosecutor limited cross examination to the issue of damages sustained by Rosato. The Government did not ask Cunningham about Richardson's guilt as to the crimes charged. Second, the prosecutor successfully framed the line of questioning so to avoid reference to any specific statements made by Richardson during the proffer. The Government asked whether Cunningham reached conclusions about the amount Richardson owed Rosato through "looking at records" and "talking to other individuals." (Tr. 541). No juror could have reasonably understood, from the prosecutor's specific questions, that Richardson previously admitted guilt to crimes charged. Collectively, this demonstrates Richardson cannot establish requisite prejudice.

### x. Motion to Withdraw After Trial

Richardson's final argument is that Attorney Hall's performance amounts to ineffective assistance because he moved to withdraw eleven days following the guilty verdict. As the Government argues, however, Attorney Hall's Motion to Withdraw includes as an attachment a letter from Richardson specifically asking Attorney Hall to withdraw. (Crim. Doc. 67). Attorney Hall's withdrawal cannot, therefore, reflect ineffective assistance.

### c. Richardson's Due Process Claims

Richardson argues his due process rights have been violated because the Government failed to correct testimony it knew to be false. Specifically, Richardson takes issue with testimony from Rosato that Richarson still owed her about $800,000 and testimony from Weaver that he never authorized debits from Smart Prong's business accounts as part of a loan program.

As mentioned before, when prosecutors fail to correct testimony they know to be false to secure a criminal conviction, a defendant's constitutional due process rights may be violated, if such false testimony reasonably impacted the jury's factual determinations. *Napue v. People of*

12

*State of Ill.*, 360 U.S. 264, 270-71 (1959). To succeed on such a theory, Richardson must show the testimony at issue was "perjured, the government must have known it was, and there must have been a reasonable likelihood that the perjured testimony affected the jury's factual determinations." *United States v. Boone*, 437 F.3d 829, 840 (8th Cir. 2006) (citations omitted). The Eighth Circuit has also instructed that prosecutors must "apprise the court when [they] know[] that [their] witness is giving testimony that is substantially misleading." *United States v. McClintic*, 570 F.2d 685, 692 (8th Cir. 1978) (citations omitted).

Richardson's issues with testimony from Rosato and Weaver are not especially germane to whether the jury found Richardson guilty of the crimes charged. As to Rosato, the amount of money Richardson still owed her does not bear on whether Richardson committed wire fraud against her, instead impacting only a restitution amount. As to Weaver, even assuming, *arguendo*, Weaver knew of Smart Prong's loan program and authorized some withdrawals from Smart Prong's business accounts, this fails to account for Richardson's unauthorized use of Smart Prong's funds to pay his own personal debts. Accordingly, nothing suggests the jury would have reached a different conclusion as to Richardson's guilt, even if Rosato and Weaver had testified differently.

Additionally, the record is clear that some doubt exists as to the overall amount Richardson still owed Rosato. Cunningham, for example, testified that he was unable to calculate with certainty a final loss number. (Tr. 543). Because Richardson does not appear to contest he received from Rosato roughly between $1.2 and $1.3 million and repaid around $171,000, Rosato's estimate of about $800,000 is not entirely unreasonable. This is particularly true given evidence that money repaid to Rosato was rolled into other notes. As to Weaver's testimony that he never approved of any loan program and never authorized withdrawals, Richardson has failed to identify how this is

13

conclusively false. Further, assuming, *arguendo*, Weaver's testimony about the loan program was false, Richardson has not shown how this testimony impacted a relevant factual determination. As discussed before, Richardson acknowledges that other witnesses testified to having some knowledge of a Smart Prong loan program, possibly casting doubt on Weaver's believability. (Doc. 31 at 6-7). Altogether, this demonstrates that Richardson's due process arguments are most appropriately understood as attacks on the credibility of Rosato and Weaver, which are generally not appropriate for motions for post-conviction relief. *See United States v. Adams*, 840 F. App'x 64, 65 (8th Cir. 2021) ("jury's credibility determinations are well-nigh unreviewable because the jury is in the best position to assess the credibility of witnesses and resolve inconsistent testimony") (citations omitted). For these reasons, Richardson has failed to show that the Government violated his due process rights at trial.

## CONCLUSION

For foregoing reasons, Richardson's § 2255 Motion is **DENIED.**

**IT IS SO ORDERED**.

DATED: June 18, 2024                                  */s/ Douglas Harpool*
                                                     **DOUGLAS HARPOOL**
                                                     **UNITED STATES DISTRICT JUDGE**